UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | |
|---|---|
| JOHN LICITRA,<br><br>    Plaintiff,<br><br>v.<br><br>J.B. HUNT TRANSPORT, INC.,<br><br>    Defendant. | Case No. 5:24-cv-5175-TLB<br><br>**Jury demanded.** |

**COMPLAINT**

### I. Introduction.

1. Plaintiff John Licitra is a commercial truck driver. Since 2017, he has worked for Defendant J.B. Hunt Transport, Inc. ("J.B. Hunt"), a motor carrier that transports freight in interstate commerce using trucks driven by individuals like Mr. Licitra. Mr. Licitra now brings this action alleging: first, that J.B. Hunt has failed to pay all compensation required by his lease agreement as mandated by the Truth-in-Leasing regulations ("TIL regulations"), 49 C.F.R. § 376, *et seq.*, promulgated under the Interstate Commerce Commission Termination Act of 1995 (the "Act"), 49 U.S.C. § 14701, *et seq.*; and second, that J.B. Hunt has breached its agreement to pay Mr. Licitra certain incentive pay to which he is contractually entitled, in retaliation for his having challenged J.B Hunt's failure to pay him all owed compensation.

### II. The Parties.

2. Plaintiff John Licitra is an individual and a citizen of the State of Illinois.

3. Defendant J.B. Hunt Transport, Inc., is a corporation organized under the laws of the State of Georgia, and which maintains its principal offices in Lowell.

1

### III. Jurisdiction and Venue.

4. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it is a civil action arising under the laws of the United States.

5. This Court has supplemental jurisdiction over the state law claim asserted in this action pursuant to 28 U.S.C. § 1367(a) because the Court has original jurisdiction over the claim asserted herein under 49 U.S.C. § 14704(a) and (d)(1), and because those state law claims are so related to that federal claim that the two form part of the same case or controversy.

6. This Court has personal jurisdiction over J.B. Hunt pursuant to Rule 4(k)(1)(a) because J.B. Hunt is subject to the jurisdiction of a court of general jurisdiction in the State of Arkansas.

7. Venue is proper in the Western District of Arkansas:

    a. pursuant to 28 U.S.C. § 1391(b)(1) because J.B. Hunt's headquarters and principal offices are located in Lowell, Arkansas, which lies in the Western District; and

    b. because the parties' agreement specifies that any action arising under that Agreement must be brought exclusively in Benton County, which lies in the Western District.

### IV. Statement of Relevant Facts.

**A.  The TIL regulations.**

8. The United States Secretary of Transportation has authority to regulate motor carriers engaged in interstate commerce.

9. Pursuant to that authority, in 1979, the Secretary's Interstate Commerce Commission – now the Federal Motor Safety Carrier Administration ("FMSCA") – adopted the TIL regulations.

10. The purpose of the TIL regulations is, *inter alia*, to:

a. encourage informational parity between motor carriers and drivers concerning the benefits and obligations of a commercial leasing relationship in order to prevent motor carriers from taking advantage of drivers' weaker bargaining position; and

b. provide drivers with a mechanism for enforcing their lease agreements through a statutory private right-to-sue for regulatory noncompliance and for motor carriers' failure to strictly adhere to the terms of their lease agreements.

11. The TIL regulations require that "leases" between motor carriers and drivers who supply their own trucking equipment be in writing and include certain terms and disclosures concerning compensation.

12. J.B. Hunt is subject to the TIL regulations because it is a "motor carrier" and "broker" authorized to transport property in interstate commerce under 49 U.S.C. § 13901, *et seq*.

**B.      Mr. Licitra's lease arrangement with J.B. Hunt.**

13. In order to provide commercial property transportation services to customers, J.B. Hunt contracts with individual commercial truck drivers known as "owner-operators."[1]

14. Since September 2017, Mr. Licitra has performed commercial truck driving services as an owner-operator subject to a lease agreement with J.B. Hunt.

15. The lease agreement is a standard form contract prepared exclusively by J.B. Hunt, and which J.B. Hunt has periodically and unilaterally amended over the past several years.

16. A copy of the operative lease agreement signed by Mr. Licitra is included with this Complaint as **Exhibit 1** and is incorporated herein by reference.

---

[1] As used herein, the term "owner-operator" refers to an individual or entity who owns their own commercial trucking vehicle and who "lease" their services, along with the use of that vehicle, to a motor carrier.

17. Mr. Licitra's lease agreement is governed by the TIL regulations because it is a contract in which Mr. Licitra grants the use of equipment for a specific term to J.B. Hunt in exchange for compensation.

18. Mr. Licitra's lease agreement provides that J.B. Hunt will pay Mr. Licitra the "invoice settlement amount … specified in Appendix A" for use of Mr. Licitra's services and equipment.

19. Specifically, the lease agreement states, in relevant part:

> a) <u>In General</u>. Contractor's invoice settlement amount is specified in Appendix A to this Agreement and constitutes the total settlement for the use of the Equipment and everything furnished, done by, or required of Contractor's workers in connection with this Agreement, including (but not limited to) driving the Equipment and performing all non-driving activities, such as installation, pre- and post-trip inspections, waiting to load or unload (detention), loading or unloading (if required), fueling, repairing and maintaining the Equipment, hooking and unhooking trailers (loaded or empty), preparing logbooks and other paperwork, and other services. **Contractor— as an independent contractor, not an employee—agrees that Contractor is responsible for paying all operating expenses.** Contractor is entitled to gross settlement only upon the full performance of any load offered by Carrier and accepted by Contractor. In the event Contractor provides services under this Agreement (1) for a separate Carrier business unit than contemplated under the initial Appendix A executed by Contractor, or (2) under a different settlement method (e.g. percent of revenue; special project) than contemplated under the initial Appendix A executed by Contractor, then Contractor will execute a new Appendix A that will govern only the services contemplated under the new Appendix A.

Agreement [**Ex. 1**], § 5(a) (emphasis original).

20. Appendix A to Mr. Licitra's lease agreement provides that J.B. Hunt will pay Mr. Licitra "gross settlement comprising" certain amounts set forth in a table to the Appendix, including $1.15 per mile for "Linehaul," both "loaded" and "empty," as follows:

| Linehaul-Loaded (Per Mile) | $1.15; See Section 1(a) of this Appendix A |
|---|---|
| Linehaul-Empty (Per Mile) | $1.15; See Section 1(a) of this Appendix A |

*Id.* [**Ex. 1**], Amendment dated May 7, 2023, to Appendix A at § 1.

21. As used in the lease agreement, the following terms have the following meanings:

a. "linehaul" refers to over-the-road transportation of property;

4

    b. "loaded" mile is a distance driven while transporting property;

    c. "empty" mile is a distance driven with no load, i.e., an empty trailer.

22. In addition to per-mile compensation, Mr. Licitra's lease agreement provides that J.B. Hunt will pay Mr. Licitra $32 each time J.B. Hunt requires him to move or "reposition" an empty trailer.

23. J.B. Hunt denotes the $32 payments for empty trailer repositioning as "shuttle pay" on Mr. Licitra's settlement statements.

**C.    J.B. Hunt's failure to pay Mr. Licitra.**

24. J.B. Hunt has failed to pay Mr. Licitra for certain "empty" miles, even though his lease agreement states that J.B. Hunt will pay him $1.15 per "empty" mile.

25. J.B. has failed to pay Mr. Licitra for certain "empty moves," even though his lease agreement states that J.B. Hunt will pay him $32 per empty move.

26. Mr. Licitra has not received compensation for all his empty miles and empty moves because J.B. Hunt has consistently failed to designate such work as "under dispatch."

27. Unless J.B. Hunt registers an assignment as "under dispatch" in its fleet management system, drivers are not eligible to receive compensation for that assignment.

28. Mr. Licitra first discovered that J.B. Hunt had failed to pay him for all empty miles and empty moves on or about March 10, 2024.

29. Upon realizing the discrepancy, Mr. Licitra contacted management at J.B. Hunt, informed them of his discovery, and requested compensation.

30. In response, J.B. Hunt paid Mr. Licitra for some – but not all – of his empty miles and moves for March 2024 but took no further action, including reviewing Mr. Licitra's records to ensure that he had received all compensation for his prior empty miles and empty moves.

31. Mr. Licitra routinely performs several empty moves and drives empty miles each week for J.B. Hunt and has done so consistently throughout his term of service with the company.

32. Mr. Licitra has not received compensation for all those moves and miles because J.B. Hunt has not designated that work as "under dispatch" and has taken no action to correct that failure for the time period preceding March 2024.

33. Further, since March 2024, J.B. Hunt has continually failed to designate Mr. Licitra's empty miles and empty moves as being "under dispatch," thus depriving Mr. Licitra of the compensation he is owed for that work.

**D.   J.B. Hunt's retaliatory breach of contract.**

34. According to his lease agreement, Mr. Licitra is entitled to receive a monthly "incentive" payment of $1,000 if certain conditions are met during the prior month.

35. These conditions include incurring no "service failures," being available to accept loads for a minimum of 20 days and incurring no moving vehicle violations.

36. Appendix F to the lease agreement defines "service failure" as follows:

> b) Contractor's driver does not incur any service failure. For purposes of this Section 1(b), a "service failure" means: (a) Contractor's driver's late pick-up or delivery, except if caused by a late release, weather or other acts of God, construction, accident, prior stops, Carrier's or the customer's scheduling error, overweight, or acts of a public enemy; (b) Contractor's driver causes a preventable accident (as defined in the Agreement) that affects any Carrier BASIC score or safety rating; (c) Contractor's driver is responsible for an overage, shortage or damage claim.

37. Immediately after Mr. Licitra raised the issue concerning unpaid compensation with J.B. Hunt, J.B. Hunt declined to pay Mr. Licitra a $1,000 "incentive" he had earned for March 2024.

38. Mr. Licitra satisfied all conditions necessary to obtain the $1,000 incentive for March 2024, but J.B. Hunt did not pay him that incentive due to a purported "service failure."

39. The "service failure" J.B. Hunt cited as the basis for denying Mr. Licitra's $1,000 incentive did not meet the Agreement's definition of "service failure."

40. Specifically, J.B. Hunt claimed that Mr. Licitra was late for a pick-up, but Mr. Licitra was only late for that pick-up due to a prior stop and the customer's scheduling error.

41. Mr. Licitra challenged J.B. Hunt's refusal to pay him the $1,000 incentive for March 2024, and J.B. Hunt ultimately issued that payment, though late.

42. For the subsequent month, however – April 2024 – J.B. Hunt again failed to pay Mr. Licitra the $1,000 safety incentive he had earned.

43. At that time, J.B. Hunt maintained that Mr. Licitra was not entitled to the $1,000 safety incentive because he was purportedly 12 minutes late for a drop-off at a customer's facility.

44. To the best of his knowledge and recollection, however, Mr. Licitra satisfied all conditions necessary to obtain the $1,000 incentive for April 2024 and did not constitute a "service failure" within the definition of that term as provided in the Agreement.

45. On information and belief, J.B. Hunt's failure to timely pay Mr. Licitra his safety incentives for March and April 2024 were done in retaliation for his challenge to the company's failure to pay him for empty miles and empty moves.

### V.    Claims.

### Count I: Truth-in-Leasing Regulations
### 49 U.S.C. § 14701, *et seq.* and 49 C.F.R. § 376, *et seq.*

46. The TIL regulations provide, in relevant part, that any lease agreement between a motor carrier and a driver must clearly state the amount to be paid by the carrier for the trucking equipment and for the driver's services. 49 C.F.R. § 376.12.

47. The TIL regulations further provide that the lease provisions required by section 376.12 "shall be adhered to and performed by the authorized carrier."

7

48. As set forth herein, J.B. Hunt has failed to adhere to and perform the provisions of its Agreement with Mr. Licitra by failing to pay him the sums specified in that Agreement for empty miles and empty trailer repositioning.

49. As a result of J.B. Hunt's substantial and material failure to adhere to the terms of its Agreement with Mr. Licitra concerning compensation J.B. Hunt has violated Mr. Licitra's rights under the TIL regulations and has caused him economic damages, including lost compensation and delayed payment of earned compensation.

50. Mr. Licitra brings this claim pursuant to 49 U.S.C. § 14704(a) and (d).

### Count II: Breach of Contract

51. As set forth herein, J.B. Hunt's Agreement with Mr. Licitra requires J.B. Hunt to pay Mr. Licitra a $1,000 "safety incentive" for each full calendar month in which he incurs no "service failures."

52. J.B. Hunt has breached its Agreement with Mr. Licitra by refusing his pay him $1,000 safety incentives based on purported service failures that either did not occur or which did not meet the Agreement's definition of a "service failure."

53. As a result of J.B. Hunt's breach of its Agreement with Mr. Licitra, Mr. Licitra has sustained economic damages in the form of unpaid and late compensation to which he is entitled.

### VI.   Jury Demand

54. Plaintiff requests a trial by jury on all claims.

### VII.   Prayer for Relief

WHEREFORE, Plaintiff respectfully requests that the Court award the following relief:

    a.    Restitution for all unpaid empty miles and empty trailer repositioning;

    b.    Restitution for all unpaid safety incentives;

8

c. Pre- and post-judgment interest;

d. Attorneys' fees and costs pursuant to 49 U.S.C. § 14704(e);

e. Any other relief as this Court deems just and proper.

Respectfully submitted,

**PLAINTIFF JOHN LICITRA**

SANFORD LAW FIRM, PLLC
Kirkpatrick Plaza
10800 Financial Centre Pkwy, Suite 510
Little Rock, Arkansas 72211
Telephone: (501) 221-0088
Facsimile: (888) 787-2040

_____
Sean Short
Ark. Bar No. 2015079
sean@sanfordlawfirm.com

Brant Casavant, Esq.
  *Pro hac vice* application forthcoming
FAIR WORK, P.C.
192 South Street, Suite 450
Boston, Massachusetts 02111
Tel: (617) 607-3260
brant@fairworklaw.com

9