UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | |
|---|---|
| JOHN LICITRA,<br><br>    Plaintiff,<br><br>v.<br><br>J.B. HUNT TRANSPORT, INC.,<br><br>    Defendant. | Case No. 5:24-cv-5175 |

**PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL ARBITRATION**

Plaintiff John Licitra is a commercial truck driver who worked for Defendant J.B. Hunt Transport, Inc. ("JBH") for nearly seven years. He filed this case seeking to recover unpaid compensation that he alleges is owed to him pursuant to his Independent Contractor Operating Agreement (the "Agreement"). Relying on several provisions in that Agreement, JBH now moves to stay this action and compel Mr. Licitra to private arbitration. The Court should deny that request because the United States Supreme Court unequivocally held in *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001), and *New Prime Inc. v. Oliveira*, 586 U.S. 105 (2019), that the Federal Arbitration Act ("FAA") does not apply to contracts of employment involving transportation workers engaged in interstate commerce – precisely the type of work Mr. Licitra performed for JBH. JBH fails to address, or even cite, this precedent, arguing instead that the Court should enforce the Agreement's arbitration provisions as a "stand-alone contract" for "resolving disputes," rather than a contract of employment. But again, JBH cites no authority to support that novel proposition. Moreover, the Agreement itself is fully integrated – a point JBH affirmatively concedes – and contains no language suggesting that either party can "pick and

1

choose" whether certain provisions operate independently of the Agreement. JBH's alternative invocation of "Arkansas law" as a basis for compelling arbitration likewise fails because JBH did not choose Arkansas law as the law governing the Agreement's arbitration provision. It chose Georgia law – and as to Georgia law, JBH has failed to establish that its arbitration provisions are enforceable. Accordingly, for the reasons set forth herein, Mr. Licitra respectfully requests that the Court deny JBH's motion to compel arbitration.

## Argument

JBH has moved to compel arbitration under "Federal and Arkansas law." (Motion, p. 1). The federal law in question is the FAA, which "requires courts to enforce private arbitration agreements." *New Prime*, 586 U.S. at 108. "But like most laws, this one bears its qualifications. Among other things, § 1 says that 'nothing herein' may be used to compel arbitration in disputes involving the 'contracts of employment' of certain transportation workers" engaged in interstate commerce. *Id.*, *quoting* 9 U.S.C. § 1. Significantly, this exclusion removes both "formal" employer-employee arrangements and contracts involving independent contractors from FAA's coverage. *Id.*, 113-15. Why? Because when Congress "enacted the [FAA] in 1925, the term 'contracts of employment' referred to agreements to perform work" of any kind, including "agreements by independent contractors to perform work." *Id.* at 119, 121. Thus, contracts for the provision of services by workers engaged in interstate commerce, in whatever form such contracts take, are "exempt from coverage under § 1" of the FAA. *Circuit City*, 532 U.S. at 112.

JBH does not – indeed, cannot – contest that Mr. Licitra was a worker engaged in interstate commerce during the nearly seven years that he drove for that company, itself a federally registered motor carrier licensed to transport goods in interstate commerce. (*See* Compl., ¶¶ 12-14). JBH's attempt to invoke the FAA as a basis for compelling Mr. Licitra to arbitration therefore fails out of the gate: as a transportation worker exempt from the FAA, JBH

has no federal legal basis upon which to compel him to arbitration. *See Silman v. Swift Trans. Inc.*, 2024 WL 4452787, at *2 (D. Ariz. Oct. 9, 2024) (defendant's motion to compel arbitration would be "easily denied" under the FAA where plaintiff was a "truck driver" engaged in interstate commerce); *Crooms v. Southwest Airlines Co.*, 459 F. Supp. 3d 1041, 1053 (N.D. Ill. May 12, 2020) ("drivers actually involved in the interstate transportation of physical goods … qualify as transportation workers" within the meaning of the FAA), *quoting Saxon v. Southwest Airlines Co.*, 2019 WL 4958247, at *3 (N.D. Ill. Oct. 8, 2019), *rev'd on other grounds*, 993 F.3d 492 (2021); *Cilluffo v. Central Refrigerated Servs., Inc.*, 2012 WL 8523507 (C.D. Cal. 2012), order clarified, 2012 WL 8523474 (C.D. Cal. 2012) (exemption applied to interstate truck drivers); *Zamora v. Swift Trans. Corp.*, 2008 WL 2369769, at *9-*10 (W.D. Tex. June 3, 2008) (terminal manager for trucking company was a "transportation worker" exempt from the FAA).

Seeking a detour around this conclusion, JBH asserts that the FAA ***does*** apply because the arbitration provisions in its Agreement with Mr. Licitra are, "from a practical, physical construction standpoint … a stand-alone contract." (Motion, p. 9). This argument fails for three reasons. First, there is no authority in this jurisdiction or any other which Mr. Licitra's counsel could find in which a court held that a dispute resolution provision contained in an otherwise fully-integrated agreement constitutes a "stand-alone contract" based on "practical, physical" considerations.[1] Second, as JBH admits, the Agreement at issue contains a fulsome integration

---

[1] If anything, courts have reached the opposite conclusion, holding that an arbitration provision embedded in a broader contract cannot be viewed in isolation. *Compare, e.g., Ford v. Genesis Fin. Solutions, Inc.*, 726 F. Supp. 3d 441 (D. Md. Mar. 2024) ("Where an arbitration clause is contained within a broader agreement, the most reasonable way to determine whether the parties entered into an agreement to arbitrate is to read the entirety of the document and to take account of clauses that apply to the entirety of the agreement.") *and Scott v. EFN Invest., LLC*, 2008 WL 11450706 (S.D. Fla. Jul. 16, 2008) (compelling arbitration where plaintiff executed a "second, free-standing, Agreement to Arbitrate" that was "separate and distinct" from the parties' original agreement); *see also In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 607 (Tex. 2005) ("But when an arbitration clause is part of an underlying contract, the rest of the parties' agreement provides the consideration.").

clause. (Compl., **Ex. 1**, § 31). "Because the parties included the integration clause, it is clear 'that the parties intended the writing to be an integration of their agreement.'" *Qwinstar Corp. v. Anthony*, 882 F.3d 748, 754 (8th Cir. 2018). Simply put, construing the arbitration provisions of the Agreement as manifesting a separate, independent contract – rather than a provision for resolving disputes embedded in a contract for employment – would directly contravene that clause.

Third, the language in the arbitration provisions cited by JBH indicates that those provisions are intended to be treated as part and parcel to the Agreement. For example, section 38 of the Agreement states that the parties are required to arbitrate "any dispute … between the parties from or relating to (or alleged to arise from or relate to) … this Agreement … and any acts, omissions, conditions, or events relating to the parties occurring during the term of this Agreement[.]" (Compl., **Ex. 1**, § 38). Likewise, that section states what law will apply both to "this Agreement" ***and*** the "parties' agreement to arbitrate disputes." (*Id.*) The severability provision relating to arbitration also bolsters the interconnectedness between arbitration and the Agreement as a whole. As that provision states, "[n]o waiver of any of the provisions of this Section 38 shall constitute a waiver of any other provisions of the Agreement whether or not similar, nor shall any waiver constitute a continuing waiver." (*Id.*, § 38(f)).

In the alternative to the FAA, JBH invokes "Arkansas law" as a basis for compelling arbitration. This argument also fails. The arbitration provision upon which JBH relies does not permit enforcement under Arkansas law. That provision states, instead, that "this Agreement (including the parties' agreement to arbitrate disputes) will be governed by the Georgia Arbitration Code." (Compl., **Ex. 1**, § 38). The Georgia Arbitration Code ("GAC"), OCGA § 9-9-1, *et seq.*, applies to "all disputes in which the parties thereto have agreed in writing to arbitrate

4

and shall provide the exclusive means by which agreements to arbitrate disputes can be enforced," but does not apply to "[a]ny contract relating to terms and conditions of employment unless the clause agreement to arbitrate is initialed by all signatories at the time of the execution of the agreement[.]" OCGA § 9-9-2(c)(9). Here, the Agreement's provisions concerning arbitration are not initialed by any party. (*See* Compl., **Ex. 1**, pp. 21-23). Thus, the Agreement cannot be enforceable under Georgia law if it is a contract "relating to the terms and conditions of employment," which it plainly is. *Id.*

The Agreement spells out in exacting detail all the terms and conditions that one would normally associate with an employment relationship. These include the timing and method of compensation; the type of work Mr. Licitra would perform; the equipment he could use, and how; the documentation Mr. Licitra was required to provide JBH; the expenses, taxes, and insurance (including workers' compensation insurance) Mr. Licitra was required to bear; the policies and procedures that Mr. Licitra was required to follow; and the types of confidential trade information Mr. Licitra was required to keep secret. (*See* Compl., **Ex. 1**, §§ 5, 12(c), (h), 13, 14, 23). If that were not enough, the Agreement also includes a lengthy provision detailing the parties' obligations and liabilities if the "Contractor" – i.e., Mr. Licitra – or his "workers" are determined to be employees of JBH. (*Id.*, § 11). Under any commonsense reading of the Georgia Arbitration Code, a contract containing such provisions can only be a "contract relating to the terms and conditions of employment." OCGA § 9-9-2(c)(9).

JBH may challenge this assertion on the grounds that the Agreement purports to classify Mr. Licitra as an independent contractor, not an employee, and on that basis, argue that the Court cannot treat the Agreement as one of "employment." The Court should reject that challenge. The GAC was "largely modeled" on the FAA. *Brookfield Country Club, Inc. v. St. James-Brookfield,*

5

*LLC*, 683 S.E.2d 40, 44 (Ga. App. 2009); *see also Bryan County v. Yates Paving & Grading Co., Inc.*, 683 S.E.2d 302, 366 (Ga. 2006) ("the GAC was drafted in large part to mirror the Federal Arbitration Act") (Hunstein, J., dissenting). And while the FAA's use of the phrase "contracts of employment" may, to "many lawyerly ears today," mean "only agreements between employers and employees," such an understanding is mistaken under *New Prime*, 586 U.S. at 114. As the Supreme Court explained: "this modern intuition isn't easily squared with evidence of the term's meaning at the time of the Act's adoption in 1925. At that time, a 'contract of employment' usually meant nothing more than an agreement to perform work. As a result, most people then would have understood § 1 to exclude not only agreements between employers and employees but also agreements that require independent contractors to perform work." *Id.* The Court held that this interpretation comported with its own precedent concerning that phrase, as well as the holdings of "many state court cases" and "state statutes." *Id.* at 115-16.

The Georgia Court of Appeals decision in *Columbus Anesthesia Group, P.C. v. Kutzner*, 459 S.E.2d 422 (Ga. App. 1995), aligns with this interpretation. There, a physician executed an ownership agreement which contained an arbitration clause with a medical firm. *Id.*, 422-23. An employment-related dispute arose, and the medical firm moved to compel arbitration, which the trial court denied because the physician's ownership agreement constituted a contract relating to the terms and conditions of employment and the parties had failed to initial the arbitration clause. *Id.* at 422. The firm appealed, but the Court affirmed, ruling that the contract was one of "employment" even though it established an "ownership interest" because it set forth his "base salary, bonuses and benefits" and the "hours to be devoted to CAG duties," among other things. *Id.* at 424. So too, here: the parties' Agreement may characterize Mr. Licitra as an "independent

contractor," but that Agreement unequivocally "relat[es] to terms and conditions of employment" as the Supreme Court has interpreted that term. OCGA § 9-9-2(c)(9).

Lastly, JBH may argue that *New Prime* and *Kutzner* are inapplicable here, at least with respect to the GAC, and that the Georgia Court of Appeals decision in *Joja Partners, LLC v. Abrams Properties, Inc.*, 585 S.E.2d 168 (Ga. App. 2003), controls. *Joja* involves an agreement pursuant to which the plaintiff was engaged as an independent contractor to provide certain real estate management and administration duties. *Id.* at 169. The Court of Appeals concluded that such an agreement was not subject to the GAC's requirements concerning "contracts of employment" because it expressly denoted that the plaintiff was an independent contractor and, unlike in *Kutzner*, did not "reflect[] the nature of the employer-employee relationship involved." *Id.* at 172. Accordingly, the Court held, absent "evidence show[ing] that the employer assumed such control," the initialing requirement of section 9-9-1(c)(9) was no defense. *Id.* at 171, *quoting Teachers' Retirement System &c. v. Forehand*, 506 S.E.2d 913 (1998).

The case now before this Court is substantially closer to *Kutzner* than *Joja*. As in *Kutzner*, the Agreement between Mr. Licitra and JBH contains numerous provisions concerning his compensation, hours of service, benefits, and obligations – including, again, the parties' obligations in the event that Mr. Licitra is later deemed an employee. Moreover, the Agreement evinces a considerable degree of control between JBH and Mr. Licitra. For example, section 26 of the Agreement states that Mr. Licitra was not permitted to have passengers in his vehicle without prior authorization from JBH. (Compl., **Ex. 1**, § 26). Section 12 of the Agreement specifies that Mr. Licitra was required to adhere to certain "Policies and Procedures" adopted by JBH, including "Driver Qualification Standards, a Drug and Alcohol Policy, customer specifications, and a Motor Carrier Resource Guide." (*Id.*, § 12). Such provisions indicate that

7

JBH assumed at least some degree of control over Mr. Licitra's work, which – absent any discovery – should be sufficient bring the Agreement outside the ambit of *Joja*.

## Conclusion

For the reasons set forth herein, Plaintiff respectfully requests that the Court deny Defendant's Motion to Compel Arbitration.

Respectfully submitted,
JOHN LICITRA,

By his attorneys,


 /s/ Brant Casavant
Brant Casavant, Mass. BBO #6726
  Admitted *pro hac vice*
FAIR WORK P.C.
192 South Street, Suite 450
Boston, Massachusetts 02111
Tel: (617) 607-3260
brant@fairworklaw.com

Sean Short
  Ark. Bar No. 2015079
sean@sanfordlawfirm.com
SANFORD LAW FIRM, PLLC
Kirkpatrick Plaza
10800 Financial Centre Parkway, Suite 510
Little Rock, AR 72211
Tel: (501) 221-0088
Fax: (888) 787-2040

Dated: December 16, 2024.

**CERTIFICATE OF SERVICE**

I state that on this 16th day of December 2024, a true and correct copy of the foregoing pleading was mailed and/or served electronically via the Court's electronic case filing system to the following individual(s):

Amy L. Tracy
TRACY LAW, PLLC
918 W. 6th Street
Little Rock, Arkansas 72202
amytracy@tracypllc.com

  /s/ Brant Casavant
Brant Casavant